Joseph L. ELLIS et al.

v.

NAVAL AIR REWORK FACILITY, ALA-MEDA, CALIFORNIA, et al.

Etta B. SAUNDERS, Individually and on behalf of others similarly situated

v.

John W. WARNER, in his capacity as Secretary of the Navy, et al.
(two cases).

Jadell BELL, Individually and on behalf of all others similarly situated

v.

John W. WARNER, in his capacity as Secretary of the Navy, et al.

Gwendolyn DAWSON, Individually and on behalf of all others similarly situated

v.

NAVAL AIR STATION, ALAMEDA, CALIFORNIA, et al.

Moses SAUNDERS and Willie Lewis, Individually and on behalf of all others similarly situated

v.

NAVAL AIR REWORK FACILITY, ALA-MEDA, CALIFORNIA, et al.

Manuel F. ALVARADO and Jose D. Terrazas, Individually and on behalf of all others similarly situated

v.

NAVAL AIR REWORK FACILITY, ALA-MEDA, CALIFORNIA, et al.

Hargrow D. BARBER, Individually and on behalf of all others similarly situated

v.

James W. MIDDENDORF, II, in his capacity as Secretary of the Navy, et al.

Hargrow D. BARBER, Individually and on behalf of all others similarly situated

v.

James W. MIDDENDORF, II, in his capacity as Secretary of the Navy, et al.

Nos. C-73-1794 WHO, C-73-2241 WHO, C-74-0028 WHO, C-74-0489 WHO, C-74-0520 WHO, C-74-0764 WHO, C-74-1286 WHO, C-75-0820 WHO and C-75-0886 WHO.

United States District Court,
N. D. California.
Sept. 22, 1975.

See also, D.C., 404 F.Supp. 377.

Clifford C. Sweet, John H. Erickson, Thomas Schneider, Miriam Morse, Mal-

colm B. Hunter, Robert Ramsey, Jr., Roger A. Clay, Jr., Oakland, Cal., John George, Berkeley, Cal., for Joseph Ellis.

Lowell Johnston, William E. Hickman, San Francisco, Cal., Jack Greenberg, James M. Nabrit, III, Charles Stephen Ralston, Eric Schnapper, New York City, Howard Moore, Jr., Berkeley, Cal., for Etta B. Saunders.

William E. Hickman, William Bennett Turner, Lowell Johnston, San Francisco, Cal., Howard Moore, Jr., Berkeley, Cal., for Jadell Bell.

Clifford C. Sweet, John H. Erickson, Alice M. Beasley, Roger A. Clay, Jr., Thomas Schneider, Miriam Steinbock, Legal Aid Society of Alameda County, Oakland, Cal., for Gwendolyn Dawson, Moses Saunders and Manuel F. Alvarado.

Howard Moore, Jr., Berkeley Cal., for Hargrow D. Barber.

James L. Browning, Jr., U. S. Atty., John F. Cooney, Jr., Asst. U. S. Atty., Civ. Div., San Francisco, Cal., for defendants.

## OPINION

ORRICK, District Judge.

In these nine consolidated actions brought under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*), minority civilian employees at the Naval Air Rework Facility (NARF) and the Naval Air Station (NAS) in Alameda, California, allege discrimination on the basis of race and sex. Plaintiffs have moved to certify a class action pursuant to Rule 23 of the Federal Rules of

Civil Procedure, and defendants Civil Service Commissioners (Commissioners) have moved to be dismissed from the case. For the reasons hereinafter set forth, I certify a class of all past, present, and future Black, Chicano, Asian and Native American civilian employees of NARF and NAS and all past, present, and future Black, Chicano, Asian and Native American applicants for civilian employment at NARF and NAS,[1] and I deny the Commissioners' motion to dismiss.

## I. THE MOTION TO CERTIFY THE CLASS

In considering the motion to certify the class, it is important to note that the Court previously ruled that federal employees are entitled as a matter of right to hearings *de novo* in federal court. *Ellis v. Naval Air Rework Facility*, 404 F.Supp. 377 (N.D.Cal., 1975).[2] This becomes important in considering whether plaintiffs have exhausted their administrative remedies as well as whether their motion to certify the class meets the requirements of Rule 23 of the Federal Rules of Civil Procedure.

### A. *Exhaustion of Administrative Remedies.*

Before considering whether the class plaintiffs seek to represent meets the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Court must first determine whether plaintiffs, having failed to raise third-party allegations through the administrative procedures outlined at 5 C.F.R. § 713.251 (1974),[3] are now precluded from bring-

---

1. I certify this class only for the discovery and liability phases of the proceedings. At this time, I make no rulings as to whether the damages portion of the proceedings, assuming for the moment that liability is established, will be handled on an individual or class-wide basis.

2. See also, *Sperling v. United States*, 515 F. 2d 465 (3d Cir. 1975); *Caro v. Schultz*, 521 F.2d 1084 (7th Cir., 1975). cf. *Chandler v. Johnson*, 515 F.2d 251 (9th Cir. 1975).

3. 5 C.F.R. § 713.251 provides:

 "*Third party allegations of discrimination.*

 (a) *Coverage.* This section applies to general allegations by organizations or other third parties of discrimination in personnel matters within the agency which are unrelated to an individual complaint of discrimination subject to §§ 713.211 through 713.222.

 (b) *Agency procedure.* The organization or other third party shall state the allega-

ing class actions. The Court is aware that the majority of district courts considering this question has refused to certify class actions where the administrative avenues have not first been exhausted. e. g., *Hackley v. Johnson,* 360 F.Supp. 1247 (D.D.C.1973); *McLaughlin v. Callaway,* 382 F.Supp. 885 (S.D.Ala.1974).

However, these courts have also held that federal employees suing under Title VII were not entitled to hearings *de novo* in federal court. In light of that ruling, it only made sense to require the administrative exhaustion of third-party allegations since the district courts would ultimately be deciding the discrimination allegations on the basis of the administrative record. Having ruled that the administrative record would be controlling, the district courts had virtually no alternative but to require development of the most extensive administrative records possible.

██ Exhaustion, however, is a judicially created remedy that must be tailored to fit the particular situation and should not be applied blindly in every case. *McKart v. United States,* 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969). Traditionally, the courts have required parties to exhaust administra-

tive remedies for the dual purpose of creating a factual record to assist the court and to put the agency on notice of plaintiffs' claims, thereby giving the agency the first opportunity to rectify internal problems. This Court having ruled that plaintiffs are entitled to hearings *de novo* and that the administrative record will not be determinative of the discrimination claim, it is no longer sound to require rigid adherence to the administrative avenues available under 5 C.F.R. § 173.251. *Sylvester v. United States Postal Service,* 393 F.Supp. 1334 (S.D.Tex., 1975); *Chisholm v. United States Postal Service,* No. C–C–73–148 (W.D.N.C., May 29, 1975). Since plaintiffs will be presenting evidence at trial, the Court no longer needs the detailed factual record of class claims that a "third-party" allegation filed under 5 C.F.R. § 713.251 might have produced.[4]

██ I also find that it is unnecessary to require plaintiffs to file "third-party" claims in order to put the defendants on notice that there was a generalized or class-wide dissatisfaction on the part of minority civilian employees at the naval base. Each of the named plaintiffs filed an "individual" administrative complaint pursuant to 5 C.F.R. § 713.211 *et seq.* Each and every of the "individual" ad-

tion with sufficient specificity so that the agency may investigate the allegation. The agency may require additional specificity as necessary to proceed with its investigation. The agency shall establish a file on each general allegation, and this file shall contain copies of all material used in making the decision on the allegation. The agency shall furnish a copy of this file to the party submitting the allegation and shall make it available to the Commission for review on request. The agency shall notify the party submitting the allegation of its decision, including any corrective action taken on the general allegations, and shall furnish to the Commission on request a copy of its decision.

(c) *Commission procedures.* If the third party disagrees with the agency decision, it may, within 30 days after receipt of the decision, request the Commission to review it. The request shall be in writing and shall set forth with particularity the

basis for the request. When the Commission receives such a request, it shall make, or require the agency to make, any additional investigations the Commission deems necessary. The Commission shall issue a decision on the allegation ordering such corrective action, with or without back pay, as it deems appropriate."

4. The Court has serious doubts as to the usefulness of any record that might have been produced through the administrative avenues available under 5 C.F.R. § 713.251. Section 713.251 does not impose any time limit in which the agency must act when it is investigating third-party complaints, nor does it impose any affirmative duty on the agency to investigate the charges. The agency is required to do no more than establish a file on each general allegation, and having made a decision, to notify the complaining party. The agency file constitutes the only record of the investigation.

ministrative complaints raised issues of policy and practice that are inherently class-type claims of discrimination. It is well-settled in the private sector employment discrimination cases that administrative complaints are to be construed broadly to encompass any discrimination that could be considered to grow out of the administrative charge. *Danner v. Phillips Petroleum*, 447 F.2d 159 (5th Cir. 1971); *King v. Georgia Power Co.*, 295 F.Supp. 943 (N.D.Ga. 1968). Federal employment claims at the administrative level are also entitled to broad construction. The agency's own regulations require that the investigation of administrative complaints shall include:

"(a) * * * thorough review of the circumstances under which the alleged discrimination occurred, the treatment of members of the complainant's group identified by his complaint as compared with the treatment of other employees in the organizational segment in which the alleged discrimination occurred, and *any policies and practices related to work situations which may constitute, or appear to constitute, discrimination even though they have not been expressly cited by the complainant.* 5 C.F.R. § 713.216(a)

In addition, 5 C.F.R. § 713.218(c)(2) requires the complaint examiner to develop a complete record and to receive into evidence "information having a bearing on the complaint or employment policies and practices relevant to the complaint * * * ".

██ Had the defendants followed their own regulations, they would have examined administratively the very policies and practices that the plaintiffs now seek to challenge on a class-wide basis at the judicial level. Defendants cannot improperly narrow the focus of an "individual" discrimination complaint at the administrative level and then claim that plaintiffs have failed to notify the agency of system-wide dissatisfaction. *Chisholm v. United States Postal Service, supra.*

 Indeed, there are strong equitable considerations that favor permitting plaintiffs to pursue a class action despite their failure to file administrative third-party allegations. Plaintiffs in these actions filed their administrative complaints without the aid of counsel. The filled out blank forms supplied to them by the naval base for initiating discrimination complaints. The forms do not indicate that plaintiffs should use a different procedure if they wish to make a system-wide class action attack on alleged discrimination rather than raise an individual complaint. Nor do the employing agencies of NARF or NAS or the CSC make any effort to explain the intricate administrative regulations to the individual complainants. Against this background, requiring the individual complainants to use the unspecified and complicated third-party allegation procedures of 5 C.F.R. § 713.-251 would run contra to the legislative aims of the 1972 Amendments to Title VII. One of the purposes behind these amendments was to permit federal employees to litigate claims in federal courts without those claims first being lost in the quagmire of administrative remedies requiring exhaustion.[5] Accordingly, I hold that plaintiffs' failure to file third-party allegations pursuant to 5 C.F.R. § 713.251 does not preclude their raising class-action claims in federal court.

### B. *Requirements of Rule 23.*

██ Seeking to certify the class under Rule 23(b)(2) of the Federal Rules

---

5. Senate Report No. 92–415 on S 2515, 92d Cong., 1st Sess. 16–17 (1971) stated:
"The testimony of the Civil Service Commission notwithstanding, the committee found that an aggrieved Federal employee does not have access to the courts. In many cases, the employee must overcome a U.S. Government defense of sovereign immunity or failure to exhaust administrative remedies with no certainty as to the steps required to exhaust such remedies."

of Civil Procedure, plaintiffs must meet the Rule 23 prerequisites for a class action.[6]

### 1. *Numerosity.*

I find that the class is so numerous that joinder of all members is impracticable. There are over 1,200 minority civilian employees at the Alameda naval base. In addition, plaintiffs seek to bring this action on behalf of future employees and applicants for employment. Since there is no way now of determining how many of these future plaintiffs there may be, their joinder is impracticable. *Jack v. Amer. Linen Supply Company,* 498 F.2d 122 (5th Cir. 1974).

### 2. *Common Questions of Law or Fact.*

I find that there are questions of law and fact common to the class members. Although defendants argue that the detailed civil service rating requirements that must be met for each federal job position are so varied that each discrimination claim presents a unique set of facts, I find that, following this line of reasoning, it would be almost impossible for a federal employee to bring a class action discrimination suit since individualized applications of the civil service ratings would always be involved. The commonality of issues for both private and federal employees rests on the common threat of discrimination that confronts all members of the class. *Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122 (5th Cir. 1969); *Chisholm v. United States Postal Service, supra.*

While I find that the general claims of discrimination in promotions, hirings, firings, and job training opportunities, present common questions of law and fact for the named plaintiffs and the class they seek to represent with respect to the liability phase of these actions, I do note that the determination of the appropriate amount of damages due the different class members, if liability is eventually established, may pose too many individual questions to be handled on a class basis. Therefore, I limit my finding that there are common questions of law and fact to the commonality of issues as to liability and the appropriateness of injunctive relief. *Harvey v. International Harvester Company,* 56 F.R.D. 47 (N.D.Cal.1972).

### 3. *Typicality of Claims.*

I find that the claims of the representative parties are typical of the claims of the class. The claims of the named plaintiffs run the gamut of discrimination in hirings, firings, and promotions. Although there may be individual variations in the particulars, the claims of the representatives need not be identical to those of the class. If all the members of the purported class would be benefited by the suit plaintiffs seek to bring, the requirement of typicality has been satisfied. *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555 (2d Cir. 1968), *aff'd in part,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

### 4. *Adequacy of Representation.*

I find that the representative parties can adequately and fairly represent the class. Although the named plaintiffs in these actions are of Black and Chicano ancestry, since their purpose in bringing

---

6. Pursuant to Rule 23(a) of the Federal Rules of Civil Procedure plaintiffs must establish that:

"One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

In addition, they must satisfy the requirement of Rule 23(b)(2) and establish that:

"the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole * * * ."

these actions is to better the positions of the minority workers at the naval base as a whole, I find they can adequately represent the claims of a broad spectrum of minority workers at the base including employees of Asian and Native American national origin. I note that there is authority to support the certification of such a broad class for purposes of discovery and liability determinations where, as here, there is no evidence of collusion or conflicting claims among members of the class. *Harvey v. International Harvester Company, supra; Penn v. Stumpf,* 308 F.Supp. 1238 (N. D.Cal.1970).

5. *Rule 23(b)(2) of the Federal Rules of Civil Procedure.*

In addition to satisfying all the above requirements of Rule 23(a), I find that the plaintiffs have satisfied the requirements of Rule 23(b)(2) and have demonstrated that the defendants have acted on grounds generally applicable to the class, thereby making injunctive relief or corresponding declaratory relief with respect to the class as a whole appropriate. Plaintiffs claim that the defendants have discriminated against them and the class they seek to represent on the "generally applicable" grounds of hiring, firing, and promotion, and on the basis of race, national origin and/or sex. Should plaintiffs successfully prove these allegations, declaratory and injunctive relief would be most appropriate. Accordingly, I certify these actions as Rule 23(b)(2) class actions for the purposes of discovery and determination of liability.

II. DISMISSAL OF THE COMMISSIONERS.

 Defendants claim that the Commissioners are not in any way involved in the alleged discrimination. and that they should, therefore, be dismissed. In

addition, the government once again raises an argument that the plaintiffs have failed to exhaust the available administrative procedures for challenging practices of the Commissioners. 5 C.F. R. §§ 300.101–300.104.

I find that the Commissioners construe their role in employment decisions too narrowly and that they are integrally involved in the challenged employment decisions at the naval base. The CSC is the general personnel department of the federal government in charge of "recruitment, measurement, ranking, and selection of individuals for initial appointment and competitive promotions in the competitive service * * *". 5 C.F.R. §§ 300.101, 294.103. The CSC prescribes the rules governing personnel actions within the federal government and promulgates and enforces such regulations that are necessary to carry out those rules. 5 U.S.C. §§ 1301, 1302 .(1966). The CSC is specifically charged with regulating and reviewing each federal agency's affirmative action program for equal employment opportunities. 5 C.F.R. § 713.201. NAS and NARF are federal agencies under the Commissioners' control and must comply with CSC standards and regulations. 5 C.F.R. § 230.201. If the plaintiffs are eventually able to establish that they have been discriminated against, they would be entitled to injunctive relief against their individual employing agencies to stop the discriminatory employment practices and to injunctive relief against the Commissioners enjoining them from continued approval of these discriminatory employment practices.

I do not find the Commissioners' assertion of the exhaustion requirement to be persuasive. Plaintiffs all filed their complaints with the employing agencies under 5 C.F.R. § 713; defendants would insist upon their filing under 5 C.F.R. §§ 300.101–300.104 as well.[7] Once

7. 5 C.F.R. § 300.104 provides in pertinent part:

"(a) *Employment practices.* (1) A candidate who believes that an employment

again, I find the filing of an administrative complaint by each named plaintiff raising system-wide discrimination allegations adequately put the CSC on notice of the dissatisfaction of minority workers at the naval base. I also find that it would be unduly burdensome to the plaintiffs to insist that they select the strictly proper section of the regulations for processing their complaints when the regulations contain a myriad of confusing and technical regulations requiring legal sophistication to decipher. No purpose being met by blindly ·requiring rigid adherence to the doctrine of exhaustion (*McKart v. United States, supra*), I deny the Commissioners' motion to dismiss.

practice which was applied to him and which is administered or required by the Commission violates a basic requirement in § 300.103 is entitled to appeal to the Commission.

(2) An appeal shall be filed in writing, shall set forth the basis for the candidate's belief that a violation occurred, and shall be filed with the Appeals Review Board, U.S. Civil Service Commission, Washington, D.C. 20415, no later than 15 days from the date the employment practice was applied to the candidate or the date he became aware of the results of the application of the employment practice. The board may extend the time limit in this subparagraph for good· cause shown by the candidate.

(3) An appeal shall be processed in accordance with Subpart D of Part 772 of this chapter."