515 F.2d 251
 10 Fair Empl.Prac.Cas. 689, 9 Empl. Prac.
Dec. P 10,123
Jewell D. CHANDLER, Appellant,
v.
Donald E. JOHNSON, in his official capacity as Administrator
of VeteransAffairs, Veterans Administration, et
al., Appellees.
 No. 74-1596.
 United States Court of Appeals,
Ninth Circuit.
 April 25, 1975.
 
 Stuart P. Herman (argued), Beverly Hills, Cal., for appellant.
 Joel L. Selig, Lawyers's Comm. For Civil Rights under Law (argued), Washington, D. C., for amicus curiae.
 Barry J. Trilling, and J. Mark Waxman, Asst. U. S. Attys., Los Angeles, Cal. (argued), for appellees.
 OPINION
 Before TRASK, CHOY and GOODWIN, Circuit Judges.
 ALFRED T. GOODWIN, Circuit Judge:
 
 
 1
 Jewell Chandler, a black, female employee of the Veterans Administration, appeals from a summary judgment denying judicial relief under Section 717 of Title VII of the Civil Rights Act of 1964, as added by Section 11 of the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16.
 
 
 2
 Appellant alleges that the VA denied her a promotion because of her sex and race. She exhausted her administrative remedies within the VA and the Civil Service Commission before beginning this action. The district court found no substantial defects in the agency proceedings.
 
 
 3
 Appellant has been employed since 1966 in the Adjudication Division, Los Angeles Region. She received five promotions in six years. In 1972, she was one of seven examiners (GS-12) interviewed for the position of Supervisory Veterans Claims Examiner (GS-13). Appellant was one of three finalists, but a Filipino-American male received the promotion.
 
 
 4
 In a two-day hearing called pursuant to 5 C.F.R. § 713.217, a complaints examiner heard ten witnesses. Other witnesses requested by appellant were not called because she did not show that they would add anything material to the record. Appellant chose to represent herself. She failed to produce objective evidence of discrimination, but the complaints examiner, in a twenty-page recommended decision, concluded that appellant was better qualified for the promotion than the person selected. The examiner found that the selecting official had discriminated against appellant because of her sex. The examiner found no evidence of racial bias. The decision recommended that appellant be promoted to the GS-13 position retroactively to September 17, 1972.
 
 
 5
 Pursuant to Civil Service regulations, the recommended decision and the hearing record were sent to the head of the VA for final agency decision. In a letter dated March 21, 1973, Mr. Kenneth Meyer, acting assistant general counsel of the VA, rejected the complaints examiner's recommendation, stating that the finding of sex discrimination was not "substantiated by the evidence".
 
 
 6
 Appellant appealed to the Civil Service Commission Board of Appeals and Review. On July 18, 1973, the board affirmed the agency decision. This litigation followed.
 
 
 7
 The appellant raises four questions: (1) Whether the delegation of reviewing authority within the VA to the assistant general counsel constituted a fatal defect in the administrative review. (2) The legal sufficiency of the assistant general counsel's reasons for rejecting the claim. (3) The sufficiency of the administrative record. (4) The right to trial de novo in the district court.
 
 I.
 
 8
 While there may have been some ambiguity in VA regulations at the time the acting assistant general counsel rejected appellant's claim, a matter we need not decide, we can find no substantive reason for holding that the delegation of reviewing authority "to the general counsel or his designee" denied the appellant the quality of agency review contemplated in the regulations implementing Title VII.
 
 
 9
 A CSC regulation, 5 C.F.R. § 713.221(a), provides that when an alleged violation of Title VII occurs in a federal agency, the head of the agency or his designee shall decide whether the agency will adopt, reject, or adopt with modifications the recommended decision of the complaints examiner. A VA regulation, 38 C.F.R. § 2.6(e)(6), delegated Title VII authority from the agency head to the general counsel or his designee. If there were, as appellant claims, inconsistent regulations in effect in 1973, she has not cited the C.F.R. references, and the government represents that the inconsistencies, if any, have been cured. In any event, the delegation question presents nothing of substance in this case.
 
 
 10
 Appellant relies on United States v. King, 478 F.2d 494 (9th Cir.), cert. denied, sub nom., Light v. United States, 414 U.S. 846, 94 S.Ct. 111, 38 L.Ed.2d 94 (1973), where we held that statutory guidelines in the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2516, prohibit the attorney general and his specially designated assistant attorneys general from redelegating the authority to authorize wiretaps. Here, unlike in King, we find no evidence of a legislative policy to limit reviewing authority to specific officials or to officials of a specific level in the bureaucracy. Indeed, it would be counterproductive and unnecessarily restrictive to subject government-employee Title VII cases to uncertainty and delay in exhausting administrative remedies because of a nonprejudicial ambiguity in the delegation of reviewing authority within the agency. The district court was correct in refusing to find a fatal defect in the agency's delegation procedure.
 
 II.
 
 11
 Appellant next asserts that the decision letter by which she received notice of final agency action rejecting her claim was fatally defective because it did not "set forth the specific reasons in detail for rejection * * *." 5 C.F.R. § 713.221(b)(2).
 
 
 12
 Appellant also contends that she made at least a prima facie case before the complaints examiner, as demonstrated by the examiner's finding of discrimination. (When an employee establishes a prima facie case of discrimination, the employer must articulate some "legitimate, non-discriminatory reason" for its action. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).)
 
 
 13
 Appellant points to the statement in the decision letter that "the record is absolutely void of any evidence or testimony in reference to any acts, words, or innuendos, discriminatory in nature, by the selecting official * * *," as evidence that Mr. Meyer rejected the complaints examiner's recommended decision for the wrong reason, i. e., because appellant had failed to prove a specific overt intent to discriminate. (Title VII proscribes "subtle as well as overt discrimination, McDonnell Douglas Corp. v. Green, 411 U.S. at 801, 93 S.Ct. 1817, and it forbids employment practices with discriminatory consequences as well as discriminatory designs. Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).)
 
 
 14
 Appellant is correct in asserting that she was entitled to an affirmative statement of nondiscriminatory reasons for the selection of another applicant. She is also correct in her assertion that she was under no duty to prove a specific intent to discriminate against her. However, the Meyer letter, as well as other documents in the administrative file, contains statements of nondiscriminatory reasons for the VA decision, and the administrative record on the whole shows that appellant did not lose her case because of an erroneous belief by Mr. Meyer that she had a higher burden of proof than the law requires.
 
 
 15
 Notwithstanding any flaws in the Meyer letter, the administrative record showed that the man who was promoted had several years of seniority both in grade and in the division, and a numerical score two points higher than appellant's on a grading system that was not shown to have been discriminatory. The Civil Service Commission Board of Appeals and Review noted these points in its decision, which was a part of the administrative record examined by the district court. These points constituted a legitimate, nondiscriminatory reason for the challenged personnel action.
 
 
 16
 Indeed, other than the facts that appellant was female and that the person promoted was male, there was no evidence to support appellant's assertion of sex discrimination. She testified at length about her opinions on racial discrimination, as did her supporting witnesses, but no witness produced evidence that would support a claim of sex discrimination. The examiner rejected the claim of racial discrimination.
 
 
 17
 The examiner allowed the claim of sex discrimination on the basis of unexplained statistics. Three persons, all male, were promoted from grade 12 to grade 13 during the 18 months in which the supervisor whose decision was challenged had the principal responsibility in such promotions. There was no evidence, however, to rebut the supervisor's statement that those promoted were the best qualified. There was no evidence that qualified women even competed for these promotions, much less that any qualified woman was rejected in favor of a less qualified man.
 
 
 18
 Every reviewing authority, plus the district court, has agreed that the record made before the complaints examiner did not support the finding of sexual discrimination. And the complaints examiner correctly found no basis for the allegation of racial bias.
 
 
 19
 We have examined the record, and we agree that there is no substantial evidence to support appellant's claims. Appellant's opinion and the opinions of those who agree with her add nothing to the allegations in the complaint. In view of our conclusion that appellant's charges before the examiner were fully answered by the evidence presented by the VA, the district court correctly held that the administrative decisions were not so defective in their form, or so unsupported by the record, as to require the court to set them aside.
 
 III.
 
 20
 The appellant contends that, whether or not the administrative proceedings satisfied the requirements of Title VII, she is entitled to a trial de novo in the district court. She also contends that, at a minimum, she is entitled to an opportunity in court to supplement the administrative record.
 
 
 21
 The VA contends that the district court's role is limited to review of the administrative decision to assure that it was not arbitrary or capricious, that there were no procedural infirmities, and that it is supported by substantial evidence.
 
 
 22
 The district court correctly rejected both polar positions. It adopted and applied the intermediate scope of inquiry expounded in Hackley v. Johnson, 360 F.Supp. 1247 (D.D.C.1973), appeal pending, sub nom., Hackley v. Roudebush (D.C.Cir. No. 73-2072).
 
 
 23
 Both parties and amicus curiae thoroughly briefed the complicated legislative history of § 717, which in 1972 extended the protections of Title VII of the Civil Rights Act of 1964 to federal employees. After careful examination of the statute and its legislative history, we agree with the Hackley trial court that if Congress had any intent on the role of the district courts in § 717 cases, it failed to disclose it. See Hackley v. Johnson, 360 F.Supp. at 1250.
 
 
 24
 The district court's role in Title VII actions by federal employees is not the same as that in Title VII actions by private employees. A private employee is entitled to a plenary hearing. McDonnell Douglas v. Green, 411 U.S. at 798-799, 93 S.Ct. 1817; Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).
 
 
 25
 We believe Congress intended to assure federal and private employees equivalent, but not identical, judicial remedies under Title VII. The remedies differ because Congress created different administrative processes for these two classes of employees. Cf. Bowers v. Campbell et al., 505 F.2d 1155 (9th Cir. 1974).
 
 
 26
 With this objective in mind, the district judge faced with a demand for a trial de novo is entitled to determine, at a pretrial conference or otherwise, why the plaintiff believes that a trial de novo is necessary. Without, at this time, attempting to canvass all the possibilities in this rapidly expanding branch of the law, a plaintiff might show that the administrative record is inadequate, or that the hearing officer cut short the proceedings in a manner that prevented a fair presentation of the plaintiff's case; or that without judicial discovery, a case could not be made. Other possibilities will no doubt be advanced.
 
 
 27
 Here, the district court was presented with a verbatim transcript of a hearing and a comprehensive civil service review. There was no material flaw in the administrative record on its face; and nothing of substance in appellant's challenge to the administrative proceedings. There was nothing before the district court to indicate that a useful purpose would be served by having a trial de novo. We find no abuse of discretion in the decision not to have a trial de novo.
 
 
 28
 On the score of reopening the record to permit the taking of more testimony, again appellant presented nothing before the district court to indicate that a reopening would produce anything of substance. Additional opinions of coworkers (that members of minority races did not fare as well in promotions as did whites) might have been brought in. But to the extent that this observation may have been relevant, it was fully explored in the administrative hearing. Again, there was no offer of proof or suggestion that new and material evidence likely to produce a different result would be forthcoming if the record were reopened. Accordingly, we find no abuse of discretion in the decision by the district court not to reopen the administrative record.
 
 
 29
 Where the administrative record affirmatively shows, as it did here, that the challenged personnel action was based upon nondiscriminatory reasons; and where, as here, the record on its face appears to be the product of a fair and impartial hearing; and where, as here, the appellant fails to point out a prejudicial defect in procedure or evidentiary deficits that should be remedied in court, the district court commits no error in deciding the case on the administrative record.
 
 
 30
 Affirmed.